IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM LILLEY,

    Plaintiff,

vs.                                        Civ. No. 17-515 KG/JHR

CVS HEALTH, CVS PHARMACY,
and JOHN DOES 1-4,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon "Plaintiff's Opposed Motion for Partial Summary Judgment on the Issue of CVS' Liability under U.J.I. 13-1320" (Motion for Partial Summary Judgment), filed on July 26, 2018. (Doc. 61). Defendant CVS Pharmacy, Inc. (CVS) responded on August 24, 2018. (Doc. 66). Plaintiff replied on September 7, 2018, and filed a Notice of Errata and Correction on September 10, 2018. (Docs. 74 and 75). Having reviewed the Motion for Partial Summary Judgment, the accompanying briefing, and the Notice of Errata and Correction, the Court denies the Motion for Partial Summary Judgment.

A. *Summary of Material Facts Viewed in the Light Most Favorable to CVS*[1]

This is a premises liability lawsuit arising from a shooting and carjacking that occurred close to midnight on May 1, 2014, in an Albuquerque CVS store parking lot. The shooter severely injured Plaintiff.

---

[1] Unless otherwise noted, this summary of material facts reflects undisputed facts.

Between April 17, 2011, and May 1, 2014, the Albuquerque Police Department (APD) responded to 298 police calls at the CVS store.[2] Not all calls for police service resulted in formal police reports. CVS expert witness, Patrick Murphy, reviewed 82 police reports "from within the CVS Pharmacy or on the parking lot" for the period of March 27, 2011, to May 14, 2014.[3] (Doc. 75-1) at 24. Of those police reports, Murphy found one aggravated assault occurred in 2011, eight robberies occurred from April 2012 through March 2013, one robbery occurred in March 2014, and only one of those robberies occurred in the parking lot.[4] *Id.* at 25. During that time period, police reports reflect an auto break-in in August 2012, an auto break-in in February

---

[2] CVS claims that the Computer Aided Dispatch (CAD) reports Plaintiff relies on to tally the 298 police calls "bear no 'certification' or other indicia of authenticity, and are therefore inadmissible as summary-judgment evidence." (Doc. 66) at 3. In response to this claim, Plaintiff produced email evidence that he paid the APD records custodian/records supervisor for providing the CAD reports. (Doc. 75-1) at 1-3. The CAD reports, thus, bear a sufficient indicia of authenticity for summary judgment purposes. *See* Fed. R. Evid. 901 (b)(7) (stating that public records "from the office where items of this kind are kept" satisfies authenticity requirement); *United States v. Isabella*, 2019 WL 1120481, at *17 (10th Cir.) ("[t]he bar for authentication of evidence is not particularly high." (citation omitted)); *Law Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009) ("We do not require an affidavit to authenticate every document submitted for consideration at summary judgment."); *In re Gregg*, 2013 WL 3989061, at *4 (Bankr. M.D. Ga.) ("[U]nder current Rule 56, an objection cannot be based solely on evidence not being authenticated—the objection must be that evidence *cannot* be presented in admissible form, not that the evidence *has not* been presented in admissible form." (emphasis in original)); *Van Velkinburgh v. Wulick*, 2008 WL 3875428, at *3 (W.D. Wash.) (holding CAD "reports are admissible as a public record and/or a business record. FRE 401, 901, and 803(6)").

[3] On March 22, 2019, the Court granted CVS' motion to strike Plaintiff's expert liability witness, Elizabeth Thomson. (Doc. 85). Consequently, the Court does not rely on Plaintiff's citation to evidence produced by Thomson.

[4] The Court notes that CVS had a CrimeCast report compiled which identified an overall risk of personal and property crimes at the CVS store. The report was created on May 11, 2015. (Doc. 61) at 48-53. Murphy relied, in part, on the current 2015 scores in the CrimeCast report to formulate his opinions. (Doc 75-1) at 26. The 2015 scores, however, are not relevant to the 2014 incident or to the occurrence of crime at the store prior to the 2014 incident.

2013, a vehicle stolen from the CVS parking lot in October 2012, and a stolen vehicle located in the parking lot in February 2013.[5]  Plaintiff's Ex. 3 at 30-40, 76-87.

On the night of May 1, 2014, the CVS exterior surveillance camera did not capture the parking lot area where the incident occurred. (Doc. 61) at 15. Although CVS did not undertake its own investigation of the incident, it "cooperates with criminal investigations conducted by the appropriate law-enforcement authorities with jurisdiction over such matters." *Id.* at 37. Also, CVS did not have a "policy in May 2014 requiring any CVS employee to report intentional acts of third-party violence on CVS exterior premises to any other CVS employee," but "any store employee may report a crime to law enforcement…." *Id.* at 38. On the night of May 1, 2014, CVS did not have warning signs posted in the parking lot, nor did it have a security guard in the parking lot. *Id.* at 44. Between May 1, 2009, and May 1, 2014, CVS did not keep any "reports, logs or data compilations" of criminal activity or suspected criminal activity. *Id*. at 42.

B. *The Complaint for Money Damages (Doc. 1-1)*

Plaintiff asserts that CVS acted in a negligent manner by breaching "a duty to use reasonable efforts to make the Location, which includes the parking lot, safe for business patrons by providing enough security to protect Plaintiff against the foreseeable acts of third persons." (Doc. 1-1) at ¶ 24. Plaintiff alleges that the CVS exterior cameras did not detect the incident and that the parking lot was dangerous "well before the incident date." *Id.* at ¶¶ 17 and 19. Plaintiff further alleges that CVS did not adequately warn him of the dangers of the parking lot, "especially after dark." *Id.* at ¶ 23.

---

[5] "CVS was not aware of any 'criminal activity' committed in the parking lot of its store … within the year prior to the subject attack." (Doc. 61) at 41.

3

*C. Standard of Review*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

*D. Discussion*

Plaintiff moves for summary judgment only on the issue of CVS' liability. Plaintiff recognizes "only a jury can compare that liability to the shooter." (Doc. 61) at 11. CVS opposes the Motion for Partial Summary Judgment arguing that Plaintiff cannot support his claim of negligence against CVS.

"Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 135 N.M. 43. In New Mexico, "[a]n owner … owes a visitor the

4

duty to use ordinary care to keep the premises safe for use by the visitor…."[6] UJI 13-1309, NMRA 1998 (2018 ed.). An owner's duty to protect a visitor extends to protecting the visitor from harm by a third party if "a foreseeable risk that a third person will injure a visitor" exists. UJI 13-1320, NMRA 1998 (2018 ed.). "[A]s the risk of danger increases, the amount of care to be exercised by the owner … also increases." *Id.*

"[B]reach of duty questions [are] usually reserved for the jury." *Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 2014-NMSC-014, ¶ 14, 326 P.3d 465. "Foreseeability as it relates to breach of duty is a general analysis and does not require that the particular harm to the plaintiff have been anticipated." *Id.* at ¶ 4. Put another way, "[t]he duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Herrera*, 2003-NMSC-018 at ¶ 8. The question before the jury in determining if an owner breached its duty "is whether the foreseeable likelihood and severity of injuries that might have occurred due to the defendant's conduct warranted the additional precautions argued by the plaintiff." *Rodriguez*, 2014-NMSC-014 at ¶ 4.

Like foreseeability in the context of a breach of duty, "proximate cause is generally a question of fact for the jury." *Herrera*, 2003-NMSC-018 at ¶ 8. Proximate causation also has a foreseeability element that "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Id.*

Although the breach of duty and proximate causation issues are normally reserved for the jury, "[a] court may still decide whether a defendant did or did not breach the duty of ordinary

---

[6]"Ordinary care" is "care which a reasonably prudent person would use in the conduct of person's own affairs. What constitutes 'ordinary care' varies with the nature of what is being done. As the risk of danger that should reasonably be foreseen increases, the amount of care required also increases. In deciding whether ordinary care has been used, the conduct in question must be considered in the light of all the surrounding circumstances." UJI 13-1603, NMRA 1998 (2018 ed.).

care as a matter of law, or that the breach of duty did not legally cause the damages alleged in the case." *Rodriguez*, 2014-NMSC-014 at ¶ 24. In that situation, the court must "conclude[] that no reasonable jury could decide the breach of duty or legal cause questions except one way." *Id.* at ¶ 24.

Plaintiff argues that CVS breached its duty of ordinary care to keep visitors safe from "crimes against person" by failing to take "reasonable steps to *discover*" the dangerous condition of the "Location" and failing to take "additional steps to prevent" the dangerous condition. (Doc. 74) at 9.

Plaintiff supports this argument by citing *Restatement (Second) of Torts* § 343 (1965). Section 343 states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> 
> - (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> - (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> - (c) fails to exercise reasonable care to protect them against the danger.

New Mexico tracked the language of Section 343 in SCRA 1986, 13-1310, a jury instruction, which stated:

> An [owner] [occupant] owes a duty to a business visitor, with respect to known or obvious dangers, if and only if:
> 
> (1) The [owner] [occupant] knows or has reason to know of a dangerous condition on his premises involving an unreasonable risk of danger to a business visitor; and
> (2) The [owner] [occupant] should reasonably anticipate that the business visitor will not discover or realize the danger [or that harm will result to the business visitor, even though the business visitor knows or has reason to know of the danger].
> 
> If both of these conditions are found to exist, then the [owner] [occupant] had a duty to use ordinary care to protect the business visitor from harm.

6

*Klopp v. Wackenhut Corp.*, 1992-NMSC-008, ¶ 5, 113 N.M. 153. *See Davis v. Gabriel*, 1990-NMCA-130, ¶¶ 7-8, 111 N.M. 289, *abrogated by Klopp*, 1992-NMSC-008 (noting SCRA 1986, 13-1310 accorded with Section 343). The New Mexico Supreme Court, however, subsequently disapproved of SCRA 1986, 13-1310. *Klopp*, 1992-NMSC-008 at ¶¶ 16-17. On March 1, 1996, SCRA 1986, 13-1310 was withdrawn, and UJI 13-1309, NMRA 1998, as amended, and UJI 13-1320, NMRA 1998 became effective. Considering that SCRA 1986, 13-1310 is no longer a proper jury instruction in New Mexico, the Court cannot rely on either SCRA 1986, 13-1310 or its underlying basis, Section 343, to analyze this Motion for Partial Summary Judgment. In other words, the Court need not assess whether the undisputed facts show that CVS failed to take reasonable steps to discover a dangerous condition. Instead, the Court analyzes this Motion for Partial Summary Judgment under UJI 13-1309, NMRA 1998 and UJI 13-1320, NMRA 1998 which focus on whether an owner exercised ordinary care to protect a visitor from "a foreseeable risk that a third person will injure a visitor."

     CVS argues that Plaintiff has not established that it breached any duty to him or proximately caused Plaintiff's injuries. As to the breach of duty issue, CVS argues primarily that that the attack on Plaintiff was not a foreseeable risk because the prior police reports and CAD police calls refer to events that are not similar to the incident at issue. In other words, CVS argues that "Plaintiff cannot adduce any evidence to show that the parking lot where he was attacked had a history of violent crime so as to place CVS on notice that a shooting and carjacking in the parking lot was foreseeable." (Doc. 66) at 16. As stated above, foreseeability in the breach of duty context does not require such specificity of risk of harm. General risk of harm suffices.

Here, the CAD police calls and police reports indicate that the CVS store had a history of criminal activity mostly within the store but also outside of the store. Even viewing the history of criminal activity in the light most favorable to CVS, no reasonable jury could find that CVS could not foresee that the parking lot, especially at night, constituted a zone of risk posing a general threat of harm to others, including Plaintiff. A jury would then have to decide exactly what risk of danger CVS could foresee to determine the amount of care or additional precautions CVS should have provided, if any. Consequently, the Court cannot determine as a matter of law that no reasonable jury could decide the breach of duty issue "except one way." *Id.* at ¶ 24. The breach of duty question properly constitutes a factual question for the jury to decide, thereby making a grant of summary judgment inappropriate.

To establish negligence, Plaintiff must also demonstrate proximate causation. Plaintiff, however, fails to argue in his Motion for Partial Summary Judgment that he meets the proximate causation element as a matter of law based on undisputed material facts. For this additional reason, Plaintiff has not met his summary judgment burden.

IT IS ORDERED that Plaintiff's Opposed Motion for Partial Summary Judgment on the Issue of CVS' Liability under U.J.I. 13-1320 (Doc. 61) is denied.

_____
UNITED STATES DISTRICT JUDGE